BERNARD FLYNN *vs.* DANIEL N. MORGAN, ADMINISTRA-
TOR, AND OTHERS.

Fairfield Co., March T., 1887. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

A creditor of a deceased debtor cannot, upon a judgment obtained against the executor or administrator, levy an execution upon the land of the estate.

Nor can he upon such a judgment obtain a judgment lien upon the land of the estate under the statute of 1878 with regard to judgment liens.

[Argued March 17th—decided May 5th, 1887.]

SUIT to foreclose a judgment lien ; brought to the Court of Common Pleas of Fairfield County.

The complaint alleged that the plaintiff recovered judgment against the defendant Morgan as administrator of the estate of Lawrence Flynn, for $975.65 damages, and $20.31 costs; that the judgment was wholly unsatisfied; that the plaintiff had filed a certificate of judgment lien upon certain described real estate of the said Flynn; that the real estate had been fraudulently conveyed away by the said Flynn in his lifetime, but that the conveyance was void as to his creditors and the property was assets of his estate; and prayed for a foreclosure of the judgment lien and possession of the property. The defendants demurred to the complaint on the ground that the property, if assets of the estate of the said Flynn, could not be subjected to and taken upon such a judgment lien. The court (*Hall, J.,*) sustained the demurrer and rendered judgment for the defendants. The plaintiff appealed. The case is more fully stated in the opinion.

*D. Davenport*, with whom was *B. Keating*, for the appellant.

The property having been fraudulently conveyed away, of course remains the property of Flynn, so far as his creditors are concerned. By the statute with regard to judgment liens (Acts of 1878, ch. 58,) a lien can be filed upon the real estate of a debtor on any unsatisfied judgment, the only limitation being that it must be real estate on which an execution on the judgment could be levied. So that the whole question here is, whether an execution on this judgment could have been levied on this real estate.

The real estate of the deceased is assets in the hands of the administrator of the estate for the payment of debts. " The judgment against the administrator must always be to recover of the goods, chattels and *estate* of the deceased in his hands." MITCHELL, C. J., in *Booth* v. *Starr*, 5 Day, 289. The law allows suits against administrators of solvent estates and the levy of an execution is the closing act in a suit and as much a part of it as any other. *Tweedy* v. *Bennett*, 31 Conn., 278; *Johnson* v. *Chapman*, 35 id., 552. " The

administrator under the statute has the same control of the real estate during the settlement of the estate that he has of the personal property and the same title to it and possession of it, and although he holds in trust for the benefit of the estate the title is still in him." *Nichols* v. *Dayton*, 34 Conn., 66. Whenever the action against an administrator can only be supported against him in that character, and he pleads any plea which admits that he has acted as such, the judgment against him must be that the plaintiff do recover the debt and costs to be levied out of the assets of the intestate, if the defendant have so much. 1 Wms. Saunders, 335, note 10 to *Hancocke* v. *Prowd*; 1 Swift's Digest, (Rev. ed.,) 456, 824; 2 id., 720. When the execution is against the estate of the deceased person in the hands of his executor, if such estate cannot be found the officer must return *non est inventus*, which lays the foundation of a *scire facias*, but if such estate can be found it may be levied upon and disposed of in the usual form. 1 Swift's Digest, (Rev. ed.,) 825; *Weeks* v. *Gibbs*, 9 Mass., 74; *Clark* v. *May*, 11 id., 233. In *Welles* v. *Faning*, 1 Root, 95, this court decided that an administrator cannot compel a creditor to take the land of the deceased in satisfaction of his debt, clearly implying that the creditor might take it if he chose.

From the foundation of the colony executions against administrators could be levied upon the real estate of the intestate. *Hawley* v. *Wheeler, Admr.*, Fairfield County Court Records, 1702-1734, p. 86; *Selectmen of Newtown* v. *Moger, Admr.*, id., 1762-4, p. 325; id., 1755-7, p. 39; *Bradley* v. *Gray*, id., 1785-91, p. 178; *Perrit* v. *Glover, Admr.*, 1 Stratford Land Records, p. 86. The common law of England was not recognized by the early settlers of Connecticut, especially in regard to land. "This court refers it to the governor and council to prepare against the next General Assembly, * * * a bill for direction and limitation of the laws of England, how far to be in force here." May, 1698; 4 Cól. Rec., 261. At a county court held at New London, September 28th, 1698, in an action of trespass this entry appears: " It is agreed by the plaintiffs and defendants that

the laws of England shall be pleaded and made use of in this case, and it is allowed by this court." On appeal to the Court of Assistants this course was severely criticised as being an attempt to adopt and be governed by the laws of a foreign country, when they were sworn to abide by the laws of the colony. Records of Court of Assistants, vol. 1, p. 112. " Mr. Jno. Elliot, Capt. James Rogers, Capt. Jos. Wakeman, Capt. James Wadsworth and Capt. Thomas Huntington, are a committee chosen to consider and draw bills and lay before this House upon these several things, viz. : whether the general reference in our law to the Word of God be a sufficient rule for the administration of justice among us, or whether it be necessary to admit the laws, customs or maxims of any other people or country into our rules of administration, any farther than the law of God, nature or reason will clearly enforce them, and if it be, what they are, how much of or what part of them, and draw a bill or bills accordingly." Journal of Lower House, May 12th, 1716. " On the proposal to the Assembly whether our law in matters judicial refers to any law besides the acts of this Assembly, the law of God, etc. Resolved in the negative." Journal of Lower House, May 15th, 1716. Extract from a letter from the governor to agent Wilkes, dated October, 1732; (State Archives, 2 Foreign Correspondence, 157;) the draft was by Lieutenant-Governor Law, who was Chief Justice. " The common law of England which, according to the opinion of her attorney and her solicitor lately given to their lordships, does not extend to the plantations without the act of their assemblies, and when they have enacted any principle of the common law into a law, that it receives its authority from their own act." Jefferson wrote (5 Works, 547) : " He [Lincoln] is thought not an able common lawyer, but there is not and never was an able one in the New England states. Their system is *sui generis*, in which the common law is little attended to." " For the common law of England hath not, as such, nor ever had, any force here." *Fitch* v. *Brainerd*, 2 Day, 189.

Certain principles of it were borrowed by our courts " as rules " at a later period of our history, much as Lord Mansfield borrowed from the law merchant, but always with such exceptions as a diversity of circumstances and the *incipient customs* of our own country required. *Ib.* This was not true in Massachusetts and New Hampshire after 1684, when their colonial charters were taken away, for the common law of England then came in and remained until changed by legislation, a circumstance which should be borne in mind in considering the statutes of those states hereafter cited.

From the beginning in Connecticut land could be taken for debts in the same manner as personal estate, except that sundry restrictions were placed upon the manner of taking it. As early as May 25th, 1647, provision was made for attaching it and levying executions upon it. 1 Col. Rec., 151. It was not till 1682 that the officer having an execution was required to resort to the personal estate first. 3 Col. Rec., 110. In the early days of the colony the widow's share was an absolute estate in the land, the same as in the personal property. In a book entitled " Will and Doom, or the Miseries of Connecticut," written about 1693, by Gershom Bulkley, it is said : " There is no proper heir in Connecticut, but lands are treated as pots and kettles." Until 1723 a married woman's estate in lands acquired by inheritance vested absolutely in her husband in the same manner as her personal property. Revision of 1796, p. 265. The act of 1699 (4 Col. Rec., 306, 307, 308) provides that distribution of the real and personal estate is to be made after debts are paid. Prior to 1666 the administrator could sell at his own volition land of the intestate, but in that year it was provided that all sales of land by administrators should be with the approbation of the General Assembly. 2 Col. Rec., 39. Power was not given to the probate court or any other to order sale of lands of deceased insolvent debtors to pay debts until 1716, nor to order sale of the lands of deceased solvent debtors to pay debts until 1782, one hundred and thirty-six years from the first settlement of the

colony.  5 Col. Rec., 577; Stat. 1808, 269, n. 18; 2 State
Records (Mss.) 1782.  Neither was power given to those
courts to limit a time for presentation of claims in the re-
spective cases until those years.  *Ib.*  During the time that
preceded these two acts conferring the power on the probate
court in the respective cases, the land stood charged with
the debts of the deceased, and lawsuits could be brought
and executions issued, and the only means of getting author-
ity to sell land was by resort to the General Assembly by
administrators.  It is preposterous to suppose that an exe-
cution could not have been levied on the land. · In 1753
the law was passed that the death of the defendant should
not abate the action in case it might have originally been
brought against the administrator, and then for the first
time execution was stayed on judgment against administra-
tors of estates that had been represented insolvent.  10 Col.
Rec., 207.  To this day execution is only stayed against ad-
ministrators of *insolvent* estates.  In 1732 an act of parlia-
ment which was adopted the next year by the General As-
sembly, allowed debts in all cases to be collected out of real
estate the same as personal, and by the General Assembly
authority was given to the administrator if he desired to
raise money to pay the debts out of the land, to apply to
the General Assembly.  7 Col. Rec., 441, 442, 443.  In
1696, a certain law was passed in Massachusetts, that land
should stand charged with debts.  Acts & Resolves of the
Province of Mass. Bay, Vol. 1, p. 254.  This was copied
verbatim by New Hampshire in 1719.  New Hamp. Prov.
Laws, 88, 89.  It was also copied verbatim by Connecticut
in 1711, " which often trotted after the Bay horse," and was
continued until the revision of 1821.  Col. Rec. of 1711;
Revision of 1808, p. 282.  In 1703-4 a certain act was pass-
ed in Massachusetts in regard to executions against execu-
tors and administrators, the provisions of which are the same
as in our law as laid down by Swift and in *Booth* v. *Starr*, 5
Day, 428.  Acts and Resolves of Mass. Bay, Vol. 1., p. 536.
This act was copied verbatim by New Hampshire in 1714.
N. Hamp. Prov. Laws, p. 50.  While we had no law until

1782 allowing probate courts to sell lands of deceased solvent debtors, or limit time for the presentation of claims, the Massachusetts law of 1696, and that of New Hampshire of 1719, contained such a provision. Now in 1759, in Massachusetts, after many executions had been levied on lands of deceased persons under laws identical with ours, except that with us the probate court had no power to order the sale of lands of deceased solvent debtors while their courts had that power, some astute lawyer raised the question whether executions could be so levied and whether resort must not be had to the probate court. And the Massachusetts General Assembly, to remove all doubts, passed a declaratory act, that under the law as it then stood executions could be levied upon deceased debtors' lands, which act has been handed down to the present day, and many decisions have been made under it. *Drinkwater* v. *Drinkwater*, 4 Mass., 354; *Steel* v. *Steel*, 4 Allen, 423. In *Mead* v. *Harvey*, 2 N. Hamp., 341, the same construction was adopted by the courts of that state.

But even if an execution *at law* could not be levied upon this land, yet having been fraudulently conveyed, the creditor can go against it in equity, and the process of that court would be within the meaning of the term execution in section 4 of the act relating to judgment liens. 1 Am. Lead. Cases, 46; note to *Salmon* v. *Bennett*, 1 Conn., 525.

*R. E. DeForest*, for the appellees.

PARDEE, J. The complaint is to the following effect: In 1880 Lawrence Flynn deeded land to his wife without consideration and in fraud of creditors; he was then indebted to the plaintiff and had no other property from which the indebtedness could be paid. The wife died intestate in 1881; Lawrence Flynn died intestate in 1883; one defendant is administrator upon his estate, the other upon the estate of the wife. There are minor children. The plaintiff has recovered a judgment against the administrator upon the estate of Lawrence Flynn; it is unsatisfied; he has

placed upon the land records a judgment lien upon the land conveyed by Lawrence Flynn to his wife; and he asks a foreclosure of that lien as against the two administrators and the heirs.

The defendants demurred for the following reasons:— "Because it appears from the allegations of the complaint that the plaintiff seeks in said action only to recover judgment of foreclosure of a pretended judgment lien, claimed to be placed upon the property described in the complaint, which property, it appears from said allegations, belongs to the estate of a deceased person, Lawrence Flynn, or else to the estate of another deceased person, Elizabeth Flynn, and which pretended judgment lien, it further appears from said allegations, is founded upon a judgment rendered against said D. N. Morgan, administrator of said deceased person, Lawrence Flynn, and against no other person; and because the said judgment would not in law constitute a lien upon said property under said circumstances."

The court held the complaint to be insufficient. The plaintiff appeals, for reasons as follows:

"The court erred in deciding that on a judgment rendered against the administrator of said Lawrence Flynn, in an action upon a debt due from the said Lawrence Flynn, during his lifetime, to the plaintiff, a judgment lien founded upon said judgment could not be filed and foreclosed upon or against the real estate of said Lawrence Flynn, owned by him at the time of his death. Also in holding that upon a judgment rendered against the administrator of said Lawrence Flynn, in an action upon a debt due from the said Lawrence Flynn, during his lifetime, to the plaintiff, the said Lawrence Flynn, having, when so indebted to the plaintiff, fraudulently conveyed the said real estate described in the complaint to his wife, the said Elizabeth Flynn, without any consideration and with intent to avoid the said debt of said Lawrence to the plaintiff, and the said Elizabeth Flynn having died while the paper title to said real estate stood in her name upon the land records of the town wherein the same was situated, the plaintiff could not file a valid judg-

ment lien against the said real estate and foreclose the same against the heirs at law of the said Elizabeth Flynn and her administrator, and against the heirs at law of said Lawrence Flynn and his administrator."

The statute of 1878 (Session Laws of that year, ch. 58,) provides in effect that if the owner of an unsatisfied judgment shall file a certificate in the town clerk's office, it shall constitute a lien upon land belonging to the debtor, which may be foreclosed or redeemed in the same manner as a mortgage, if an execution could have been levied thereon.

It is the claim of the plaintiff that Lawrence Flynn made a fraudulent conveyance of land; that as a matter of law it was owned by him at his death; that upon the judgment against his administrator execution might issue and be levied thereon; and that a lien may be imposed and become, and be foreclosed as, a mortgage. Under our system mortgages are enforced by strict foreclosure; the land goes to the creditor, without appraisal, unless the debtor redeems.

We cannot accede to this. The right to take real estate upon appraisal by the levy of an execution can be exercised only upon such as is holden by a living debtor. Such right is in derogation of the common law. It is the creation of the statute, and must be exercised in strict accordance with its requirements. These, including the prerequisite unsuccessful search for personal estate, the search for real estate of the debtor holden in his own right, the appointment by him of one appraiser who shall be legally indifferent to him, and the privilege of uniting with the creditor in the appointment of another, all point to a living owner and debtor; none of them to an executor or administrator holding title temporarily for creditors, until it shall be determined what portion of the estate these will consume; the remainder to devolve upon devisees or heirs.

Again, during the process of settlement the solvent estate of a deceased person is not to be exposed to creditors contending for precedence in the opportunity to apply land upon their debts upon appraisal. They are entitled to strict justice; full payment according to the legal standard;

Flynn *v.* Morgan.

payment in money. They cannot compel the administrator to permit them to take it upon appraisal. Presumably as a rule it is more advantageous to the estate itself to convert the land into money, than to allow the creditor to do it. The estate is entitled to this advantage. In the absence of personal estate sufficient for payment of debts, under the order of the probate court the administrator has the privilege of converting land into money for that purpose, by sale so guarded and conducted as to constitute an appraisal, to which no person in interest can object.

When the creditor has by a judgment made certain the sum due to him he is sure of payment in full; there is no unwilling debtor resisting or postponing him; in due time the law will bring the money to him without action on his part; there is no need of the hastening power of an execution. In its desire to protect the estate of a deceased debtor, the law will not allow the creditor to burden it with the unnecessary cost attending the levy of an execution, nor open to him a chance to speculate upon the privilege of taking land upon appraisal.

Again, in this state if an executor or administrator enters upon the settlement of an estate as solvent and subsequently has reason for believing that it is insolvent, the probate court upon his motion will order the settlement to be concluded as of an insolvent estate. The record is silent as to the condition of this estate; and until settlement is completed there is possibility that it may be necessary to settle it as insolvent. Should this prove to be the case the plaintiff cannot by virtue of his lien convert his judgment into a statutory mortgage and foreclose that as an incumbrance prior in time and right to all other debts, and therefore to be paid in full. For, at death, the law through the instrumentality of the probate court takes possession of the estate of the decedent for the purpose of application of the same to the payment of creditors equally, each class in legal order of precedence. It favors diligence against living debtors. But, they being dead, there remains no opportunity for diligence. The creditor cannot obtain a constructive mort-

gage from a deceased debtor; he cannot draw to himself any additional security or right to preference, at least so far as real estate is concerned; he must stand still and await proportionate payment. Again, neither in the case of a solvent nor in that of an insolvent estate does the cited statute intend to put a mortgage upon the land of a debtor after his death, and compel the administrator or the creditor or the heir to redeem it. Presumptively they would be unable to do so.

The exhaustive research of the plaintiff's counsel has brought to light a few instances between 1707 and the present time, of the levy of executions upon lands of deceased debtors, upon judgments against executors or administrators. These may well stand upon the presumed acquiescence of all persons interested. But now the heirs challenge the right of the plaintiff to take land without appraisal, instead of money for the debt due to him. If the administrator having land will not convert it and pay, the creditor has an action upon his bond; security provided by law for such an emergency.

In *Booth* v. *Starr*, 5 Conn., 289, the case was this: *A* conveyed land by deed with covenants of warranty, died, and his estate was settled and distributed; subsequently his grantee was evicted. The question was, whether the administrator was liable in an action upon the breach. Held that he was not. MITCHELL, C. J., in a dissenting opinion, arguing that it would be no hardship upon him if held liable, said:—"But on the other hand, if the administrator is held accountable, and we consider the bonds from the heirs as assets in his hands, when he has distributed the property there can be no difficulty in any case. His security is ample, he can recover at any length of time. The judgment against him must always be to recover of the goods, chattels and estate of the deceased in his hands." Meaning, that the administrator could not be harmed, because the judgment would not be against his own property but only against that of the estate in his hands, to be enforced in the manner provided by law; that is, under our probate system, by a

sale of land under the order of the probate court and payment of the debts in money. He does not say that it is to be done by setting off land upon appraisal by execution.

In Swift's Digest, 325, it is said that "when the execution is against the estate of a deceased person in the hands of his executor or administrator, if such estate cannot be found the officer must return *non est inventus*, which lays the foundation of a *scire facias ;* but if such estate can be found it may be levied upon and disposed of in due and usual form " ; citing *Weeks* v. *Gibbs*, 9 Mass., 74. Probably the learned author assumed that this case stated a rule of common law ; but there is a statute in that state expressly providing for such levy; therefore the citation is inapplicable unless the statute accompanies it.

In New Hampshire a statute expressly authorizes the levy of an execution upon the land of a deceased debtor ; and another provides for the sale of such land for the payment of debts by the executor or administrator under an order of the probate court. In *Mead* v. *Harvey*, 2 N. Hampshire, 342, speaking of the combined effect of these statutes, the court said:—"The question which this case presents for our decision is, whether an execution running against the goods and estate of a person deceased in the hands of his executor or administrator, can be extended upon the lands which were of the person deceased? It is very clear that at common law there was no way by which a creditor could reach the lands of his deceased debtor by an action against his executor. All chattels, real and personal, went to executors and administrators, and were in their hands assets for the payment of debts ; but as soon as the personal estate was exhausted in a due course of administration, a plea of *plene administravit* was a good answer to any action that could be brought against them. They were liable to the amount of the personal estate only, and had nothing to do with the lands. At common law lands immediately descended to the heir and became assets in his hands to satisfy debts to the payment of which the ancestor had bound his heir. And the statute of 3 WILLIAM AND MARY, ch. 14, made

estate in certain cases assets in the hands of devisees to pay bonds and other specialties in which the deceased had bound himself and heirs, and an action was given against the heir and devisee jointly. Lovelass, 93; *Wilson* v. *Knubley*, 7 East, 128; Comyn's Dig., *Assets, A.; Buckley* v. *Nightingale*, 1 Strange, 665; *Shetelworth* v. *Neville*, 1 D. & E., 454; 2 Saund., 7, note 4. Upon recognizance at common law, when the connusor was dead, in order to reach the land, the *scire facias* lay only against the heir, or the person to whom the connusor had conveyed the land. Shep. Touchstone, 359; 2 Saunders, 6. The extent of an execution running against the goods and estate of a person deceased, in the hands of his executor or administrator, upon lands in the hands of his heir or devisee, is utterly unknown to the common or statute law of England. If then there is any law that will warrant such an extent in this state, it is certainly not one which our ancestors brought with them from that country." After citing the New Hampshire statutes the court continues:—"Such are the provisions of our statutes now in force on this subject; and we are inclined to think that if a construction were now for the first time to be given to them, we should be of opinion that they did not authorize the extent of an execution, running against the goods and estate of a person deceased in the hands of his executor or administrator, upon lands. We should have supposed that the real intention of the legislature was, that every man's estate, both real and personal, should be liable to be taken upon execution at any time during his life; but that after his death his real estate should stand charged with the payment of his debts only in case of a deficiency of personal estate, and to the amount of such deficiency, and that such deficiency was to be supplied by a sale of real estate authorized by the judge of probate after notice given to the heirs at law and a hearing of the parties interested. And we were not a little surprised when we first examined our statutes on this subject that a different construction should ever have been put upon them. But upon further investigation we found that our provincial acts had been copied from the provincial

acts of Massachusetts, and that those acts had there been construed to authorize extents of this kind. For in 1759, the legislature of that province passed the act of 32 GEORGE II, chap. 271, in which, after a preamble reciting that ' whereas some doubts and questions have arisen upon the construction of some parts of an act, entitled an act relating to executors and administrators,' whether by force of the same real estates of the testators and intestates may be taken in execution for the satisfaction of judgments recovered against their ' estates in the hands of their executors and administrators,' etc., it was enacted ' that real estates of any testators or intestates are and shall be liable to be taken and levied upon by any execution issuing upon judgment recovered against executors and administrators in such capacity, being the proper debts of the testators or intestates,' and it is certain that an opinion has for a long time prevailed very generally in this state that such extents were valid, and it is believed that their validity has never before been called in question in any of our courts. Many such extents have been made within the last twenty years, and are the only foundation upon which the titles to many estates rest. It was said by Lord COKE that ' the judges in general cases have great respect and consideration that their judgments shall not impeach the estates and inheritance of many men against ancient and common approbation.' The remark is full of wisdom and sound sense, and the principle applies with all its force to the question now before us. If by a new construction we should defeat the titles of the many inheritances which rest upon extents of this kind, much inconvenience, injustice and mischief must be the necessary consequence. And we are of opinion that, however erroneous the construction of these statutes might now be thought to be, the long and uninterrupted usage, common understanding and general acquiescence have made it the true construction, and that it must now be considered as settled that an execution running against the goods and estate of a person deceased in the hands of his executor or administrator, may be extended upon lands, and that lands must for

that purpose be considered as estate in the hands of executors and administrators. We have not, however, come to this conclusion until after a careful examination of the remedies which the law will afford to heirs and devisees, whose lands may be thus taken; and in the first place, we entertain no doubt that heirs and devisees may redeem lands thus taken, in the same manner that debtors may redeem their lands which have been taken in execution. In the next place, if executors and administrators permit the lands of their testators and intestates to be taken in execution when they have sufficient personal estate in their hands, it is unfaithful administration, and a breach of the condition of their bonds. This is a necessary consequence of the provision of the statute which has made the personal estate chargeable with the debts in the first instance and the real estate chargeable only in case of a deficiency of personal assets. 4 Mass. Reps., 354; id., 654; 9 id., 376; 10 id., 450."

There is no error in the judgment complained of.

In this opinion the other judges concurred.