LUKE BOWEN, ADMINISTRATOR, *vs.* THE NATIONAL LIFE ASSOCIATION.

Hartford Dist., Oct. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

One who has no right, title, or interest in the subject-matter of the action cannot properly be substituted as plaintiff under § 889 of the General Statutes.

Accordingly, where the insured and the beneficiary in a policy of life insurance united in a written transfer of such policy in conformity with the terms thereof, it was held, that such transfer operated not only as an assignment of the policy, but also as the appointment in writing of a new beneficiary, which the policy expressly permitted, and therefore the administrator of the original beneficiary had no interest in a suit brought to recover the amount of the policy from the insurance company, and his substitution as plaintiff by order of the trial court in a pending suit was error which entitled the defendant to a new trial.

The substitution of a new sole plaintiff, under § 889 of the General Statutes, is not the commencement of a suit within the meaning of an insurance policy which provides that no suit shall be brought upon the policy after the lapse of one year from the death of the insured.

In this state a transfer of a policy of life insurance by the owner, if otherwise valid, is not rendered illegal merely because the transferee or assignee has no insurable interest in the life of the insured.

Where the policy provided that the amount insured should be due and payable within ninety days after satisfactory proof of the death of the insured had been received by the insurance company, and there was no rule, by-law, or charter provision modifying the terms of the policy in this respect, it was held, that such proof of death did not require a true statement of the claimant's interest and how he acquired it, and that an untrue and false statement in these particulars could not detract from the sufficiency of the proofs of death.

[Argued October 4th—decided December 13th, 1893.

ACTION to recover the amount of a policy of life insurance, brought to the Superior Court in Hartford County, and tried to the jury before *F. B. Hall, J.*; verdict and judgment for the plaintiff and appeal by the defendant.

It was admitted by the defendant in its answer that the Association had issued the policy in question, insuring the life of Michael O'Connell, and that said policy was, by its terms, payable to Catherine O'Connell, mother of said Michael, " or

to such other persons as the insured may hereafter appoint by writing, on notice thereof being given to the secretary of the Association." The defendant also admitted the death of Michael O'Connell and the payment of all premiums up to the time of his death, and that no part of the sum named in the policy had ever been paid by the defendant ; also that the plaintiff gave to the defendant notice and proof of death and demanded payment.

The plaintiff Gavin alleged in his complaint that shortly after the policy issued it had been duly assigned by said Michael and Catherine O'Connell to one Luke Bowen, and thereafter had been again assigned by the said Bowen to him, the said Gavin ; and that in each instance notice and a copy of the assignment was given to the defendant.

These averments of the assignments of the policy the defendant answered as follows :—" As to paragraphs 2 and 3 the defendant is not informed, and leaves the plaintiff to proof thereof."

The defendant also pleaded three special defenses. One was that the said Michael O'Connell, in the application for said policy, had not made true, full, and complete answers, statements, and representations, in certain specified particulars. Another was that the policy in question was not, in fact, obtained by Michael O'Connell for himself, or for the benefit of his mother, but was in fact obtained by said Bowen, who, it was alleged, paid all the expenses connected therewith although he, said Bowen, had no insurable interest in the life of said Michael, and the policy was in fact a mere speculative or wager policy, fraudulent and void.

The other facts are sufficiently stated in the opinion.

*Charles E. Perkins*, with whom was *Arthur Perkins*, for the appellant (defendant).

I. The court erred in allowing Bowen, as administrator of Catherine O'Connell, to be substituted as sole plaintiff in place of Gavin.

It did not appear that there had been any mistake in com-

mencing the action in Gavin's name and in fact there was none.

While the defendant contends that Bowen was in fact the real party in interest, he certainly had no cause of action as administrator of Mrs. O'Connell. Mrs. O'Connell having joined with Michael O'Connell in an assignment of the policy, had thereafter no interest in the policy or its avails; and of course her administrator could have none. Of course, then, it could not be necessary for the determination of the real matter in dispute that a person should be made plaintiff who had no right to recover. The court seemed to think that it was merely a case of assignment of a chose in action, over-looking entirely the fact that by the terms of the policy it was made payable to Bowen. We have, therefore, a case where the plaintiff has no right to recover, an objection made on that precise ground, and a distinct ruling upon it by the court. We submit that this of itself is a clear ground for the reversal of the judgment.

II. The policy expressly provides that no action shall be brought after a year from the death. This limitation has often been held to be valid and proper, and will be enforced by courts. It is clear that as O'Connell died March 19, 1890, in January, 1893, no action could have been brought upon the policy by Bowen as administrator. His claim was barred by the provision of the policy as effectually as if the statute of limitations had run against it, and the bar of neither can be avoided by bringing in a new plaintiff against whom the limitation has run. The policy says, "no action shall be maintained after the lapse of one year," and it was obvious error to allow the substitution to be made against the objection on this precise ground.

It is well settled that if this suit had been defeated by be-ing brought by the wrong person, another suit by the proper person would have been barred. *Sherman* v. *Barnes*, 8 Conn., 138.

The same rule has been applied to the six-months bar of suits against solvent estates. *Spaulding* v. *Butts*, 6 Conn., 28.

In *Drake* v. *Watson*, 4 Day, 37, it was held that after the statute has run, an amendment setting up the barred cause of action will not be allowed. This case was affirmed in *State* v. *Rowley*, 12 Conn., 107.

III. The last assignment of error is in relation to the proofs of death, and we will consider with it the question made about the proofs in objecting to the substitution of plaintiff, as the reasons are substantially the same.

The policy provides that the amount of insurance shall not be payable until satisfactory proofs shall be made to the company. These are to be made by the person to whom the policy is payable, and are the only means of information the company has in relation to the death. It is material that they should be correct, and if they are false and fraudulent in any material part, the approval of the company is obtained by fraud, and is of no effect, and the condition upon which the money becomes payable has not been performed.

Besides this the company has a right to know whether the claimant is entitled to the money, and whether he has any insurable interest in the life of the insured.

Now, in this case, Gavin, in his proofs, swore positively that he had " an actual and *bonâ fide* insurable interest " in the life of O'Connell to the full amount of $2,000, which was entirely untrue, as the policy had been conveyed to him merely to prevent its being attached by Bowen's creditors, and he had no real interest in it at all, and if he had stated the facts as they were, the company would not have accepted the proofs as satisfactory, so that their approval being obtained by his false representations was not binding upon the defendant.

At the time these proofs were made Mrs. O'Connell was alive, and if she was entitled to the money should have made the proofs ; in which case the company would have certainly required further proofs from her. As an assignee could not be expected to know the facts relating to the death and previous sickness of O'Connell, his answers to the 11th, 12th, 13th and 14th questions relating to matters which it was of the utmost importance to the company to know, were re-

ceived, whereas if the proofs had been made by the mother, the company would have insisted upon full answers.

The result was, that by the combined action of Gavin and the rulings of the court in allowing the substitution of a new plaintiff, and refusing to charge as requested, the company was deprived of its contract rights and of a valid defense.

The filing of true and proper proofs by the proper person· was of such importance that it was made a condition precedent to any recovery, and we submit that the court erred in telling the jury that these pretended proofs, which were to the knowledge of the affiant false and fraudulent, were legal and sufficient.

*F. L. Hungerford* and *John H. Kirkham*, for the appellee (plaintiff).

I. Did the court err in allowing the substitution of Bowen, administrator, as plaintiff, in the place of Gavin?

Section 889, General Statutes, provides that, "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it has been so commenced through mistake, and that it is necessary for the determination of the real matter in dispute, so to do, allow any other person to be substituted or added as plaintiff."

It was within the discretion of the court to grant or to disallow the motion, and its decision is not the subject of error or of review.

The allowance of amendments is a matter of discretion, not the subject of error. *Bulkeley* v. *Andrews*, 39 Conn., 535; *Hollister* v. *Hollister*, 38 id., 180; *Husted* v. *Greenwich*, 11 id., 383.

In *Merriam* v. *Langdon*, 10 Conn., 472, 473, Judge Church says: "It is certainly very well settled at this time that where the power of permitting amendments is conferred upon courts, the allowance or disallowance of them is a matter of discretion with the court, and therefore affords no ground of error."

In *Hollister* v. *Hollister*, 38 Conn., 180, the above citation is quoted by Foster, J., and he adds, "This was nearly thirty

years ago, and the same doctrine has since been frequently recognized and repeated."

Moreover, error cannot be predicated on the exercise of the court of its discretion. *Chapman* v. *Loomis*, 36 Conn., 460.

Even were the ruling of the lower court to be reviewed, we think that the objections of the defendant will not convince this court that any injustice was done in allowing the motion.

The claim that Bowen was the real plaintiff in interest, and that he, if any one, ought to be made plaintiff, loses sight entirely of the well-established and much practiced rule that an assignee can bring suit in the name of his assignor. *Beach* v. *Fairbanks*, 52 Conn., 167. Indeed, by the common law, that is the only way in which an assignee can bring his suit.

In regard to defendant's fourth objection, the policy provides: "It is expressly understood and agreed that no action shall be maintained nor recovery had for any claim upon or by virtue of this policy after the lapse of one year from the death of said member."

This provision is obscurely worded, but probably means that no suit shall be brought upon the policy after the expiration of one year from the death of the insured. Being in derogation of the rights of the insured and his beneficiary, it should be strictly construed in favor of the latter on grounds of public policy. The amendment of the complaint by changing the plaintiff was not bringing a new action nor changing the form or ground of the action.

In *Merriam* v. *Langdon*, 10 Conn., 473, it is held that an amendment of a *qui tam* information, not changing the form or ground of the action, may be made by the plaintiff after the filing of a new information would be barred by the statute of limitations. *A fortiori*, an amendment of an action in contract will be allowed in like circumstances.

As above said, such provisions in insurance policies should be strictly construed and not allowed to defeat the payment

of the obligation, unless by such construction the contract would be clearly violated.

Special provisos or exceptions in policies of insurance must be couched in clear terms, and not so as to mislead the insured; and where the terms will rationally permit it, he can claim a construction favorable to himself. *Boon* v. *Ætna Ins. Co.*, 40 Conn., 586 (U. S. Circuit Court); *S. C.*, 12 Blatchf., 24.

Now this policy provides that "no action shall be maintained nor recovery had" after the one year. Taken literally this would prevent a suit that had been in court over a year from the death of the insured from being determined, and would oust the court of jurisdiction and have a far more potent influence that any statute of limitation ever yet passed by the legislature. Such a provision would be of no force or effect and void, as it would be against public policy and law.

On the other hand, if this provision shall be construed to mean that no suit shall be brought after one year from the death of the insured, then the mere substitution of a new plaintiff cannot be considered to constitute a new suit. The action was the same, the declaration the same, and by a well-established principle of fiction of the law, the change having been allowed to be made, it will be considered to date back to the original date of the writ, and thus to have always been as amended. *Windham* v. *Litchfield*, 22 Conn., 232.

Moreover, if the change in plaintiff was, in fact, a violation of this provision of the policy, the defendant should have taken advantage of this defence, by a special plea, and it was given by the court ample opportunity to amend its pleadings.

We respectfully submit that in thus allowing the case to be tried on its merits, the court exercised the discretion reposed in it by a special act of the legislature, wisely and without any disregard or prejudice to the rights of the defendant. *McDonald* v. *Ward*, 57 Conn., 304.

II. The last reason of appeal relates to the charge of the court to the jury upon the question of the sufficiency of the proofs of loss. Upon this branch of the case the defendant requested the court to charge as follows:

"If the jury find that the proofs of death made by Gavin were the only proofs made, and that these proofs were false and fraudulent in relation to the interest of said Gavin in the life of said O'Connell, that said proofs were not sufficient and were void, and the claim has never become due."

This is the whole of the request, and the court adds that the fact that proofs of death were made was not questioned by the defendant, and that the sufficiency of such proofs of death was not questioned, excepting in the respects indicated in the request, and the court charged as follows:—

"It is admitted that proofs of death were filed as presented to the company by Gavin, which are before you. Exhibit 7 is the exhibit of proofs of death. And there is no claim that any other proofs of death were made. Concerning the proof of death, I think I may say there is no material dispute as to the facts. The defendant's claim is that the proof which was in fact made was insufficient in law. Whether or not the proofs of death were sufficient, is a question of law. I shall charge you upon the admitted facts that the proofs of death were sufficient."

This charge was sufficient and contains no error. *Insurance Co.* v. *Rodel*, 95 U. S., 237.

TORRANCE, J. From the record in this case it appears that the action was originally brought against the defendant by one Gavin, as assignee of the policy of insurance upon which the suit was brought. The policy was issued by the defendant to and upon the life of Michael O'Connell, and was by its terms made payable to Catherine O'Connell, the mother of the insured, or legal representatives, or to such other persons as the insured should thereafter appoint by writing on notice thereof being given to the secretary of the defendant. The complaint alleged that the insured and his mother, the beneficiary, for a valuable consideration assigned the policy, on the 20th day of October, 1890, to Luke Bowen, and that notice and a copy of the assignment had been given to the defendant on the same day. It further alleged that on the 19th day of February, 1891, Bowen, for value received,

assigned the policy to the plaintiff Gavin, his heirs and assigns, and that notice of the assignment was on the same day given to the defendant.   On the trial before the Superior Court the original plaintiff, Gavin, offered evidence in support of the allegations of his complaint, and then rested his case.

The defendant thereupon proceeded to offer testimony in its behalf, and while so doing the trial was adjourned over Sunday to the following Tuesday.   In the meanwhile Bowen, the present plaintiff, took out letters of administration upon the estate of said Catherine O'Connell, the mother, who had died before the commencement of the suit, and on Tuesday morning, as soon as court opened, the plaintiff's counsel asked the court to allow Bowen, as the administrator of Catherine O'Connell, to be substituted as plaintiff in the place of Gavin, upon the ground that the action had been commenced by mistake in the name of the wrong person as plaintiff, and that it was necessary for the determination of the matter in dispute to make such substitution.

The defendant objected to such change of parties upon several grounds, one of which was in substance that Bowen, as administrator of Catherine O'Connell, had no interest in fact in the suit, or any rights under the policy as against the defendant.

The court overruled the objections of the defendant, allowed the complaint to be amended by striking out Gavin's name as plaintiff and substituting therefor " Luke Bowen, as administrator of Catherine C'Connell, late of New Britain in said county, deceased," and in certain other respects to correspond with change of plaintiffs, and the case was thereafter prosecuted by Bowen as such administrator to final judgment.   In this way Gavin, the original plaintiff, went wholly out of the case, and the present plaintiff entered and prosecuted the suit as sole plaintiff.

The action of the court below in permitting this change of plaintiffs to be made under these circumstances is one of the errors assigned upon this appeal, and the one which will be, on account of its importance, first considered.

If it be true that Catherine O'Connell at her death had no right, title or interest in or to the policy sued upon, or to the money due thereon as against the company, it would seem to follow inevitably that her estate would have none, and consequently her administrator would have none. To determine whether she had any such right or interest at her death, it is necessary to look at the terms of the policy, and at the writings that passed between herself and her son and Bowen in 1890, as they appear of record. In discussing this question we assume, merely for the purpose of the argument, that the policy sued upon is in all respects a valid policy, regularly issued and binding upon the company, as upon its face it appears to be.

The policy itself states that it is issued to Michael O'Connell on his life, and in it the company agrees with him, among other things, that the money which should become due on it, should be due and payable " to Catherine O'Connell, mother, or legal representatives, or to such other persons as the insured may hereafter appoint by writing, on notice thereof being given to the association." It further provides that the policy should not be assigned or transferred " unless notice and copy of the assignment be given to said association." It thus apparently gives the power to Michael O'Connell to appoint, by way of substitution for his mother, another beneficiary or beneficiaries, at any time, and without her consent or acquiescence, provided the appointment be made in writing and notice of it be given to the secretary of the association ; and it recognizes the right to assign the policy if notice thereof and a copy of the assignment be given to the association. Whether Michael under this policy had in fact the power to appoint a new beneficiary in the place of his mother without her consent, or whether he could assign it so as to deprive her of all rights under it unless she joined in the assignment, need not now be determined ; for, as the only parties in interest, they could together certainly appoint a new beneficiary, and could together make a valid assignment, if such appointment or assignment could be made at all. Under the terms of the policy we think it quite clear

that they together could make a valid appointment of a new beneficiary in place of the mother, and could together make any legal assignment of the policy. Under the law of this state they could assign the policy to Bowen.

"In some jurisdictions the law forbids the transfer of a policy except to a person who has such an interest in the life insured as would have authorized the procurement of the policy. But we think the weight of argument is in favor of permitting the owner of a contract of life insurance, which has the sanction of the law, to sell it upon the most advantageous terms, having the world for a market, provided it is an honest exchange of property, and not a mere cover for a wagering transaction."

"In countless instances and under many forms the law has sanctioned contracts which of necessity must have resulted in pecuniary profit to one person, if another had soon died. The danger to human life from this source has not yet become sufficiently appreciable to provoke condemnation of these. There is no good reason why the law should condemn an entire class of contracts, great in number, no more dangerous to life, and of equal capacity for good. The rule of law governing all other contracts would seem to be the proper one for these, to uphold those which are honest and beneficial and annul all which are proven to be covers for fraud." *Fitzpatrick* v. *Hartford Life & Annuity Ins. Co.*, 56 Conn., 116.

Under these circumstances Michael and his mother, soon after the policy was delivered, gave to Luke Bowen a writing properly executed under their hands and seals, which recites that for a valuable consideration they sell, assign, transfer and set over to him and his assigns forever all their right, title and interest, present or future, in and to the policy in suit, and directs all moneys due and accruing from said policy in case of Michael's death to be paid to Bowen.

In the complaint it is alleged that notice and copy of this writing were given to the defendant as required by the policy on the day it was made. This allegation the defendant in

its answer does not deny, " but leaves the plaintiff to proof thereof."

The rule requires that every material allegation in any pleading which is not denied shall be deemed to be admitted unless he avers that he has not any knowledge or information thereof sufficient to form a belief. Practice Book, p. 16 ; § 4. The defendant does not comply with this rule in his answer to paragraphs 2 and 3 of the complaint, and the allegations thereof may well be taken to have been admitted. From the record in the case we think it sufficiently appears, in the absence therein of all statements to the contrary, that such notice and copy were given to the defendant as alleged, and that no objection to the transaction was made by the defendant prior to the commencement of this suit. As the consideration for the delivery of this writing to him, Bowen under his hand and seal, made and delivered to Michael a writing in which Bowen agreed with Michael in substance as follows:—If Michael should outlive his expectancy of life under the policy " there should be due and payable to said Michael J. O'Connell, three hundred dollars." But in case " of the previous death of the said Michael J. O'Connell, the sum of three hundred dollars shall be due and payable " to Catherine his mother. There is nothing upon the record to show that this transaction between these parties was not made in good faith. Upon this record, and for the purposes of the argument, we must assume that it was " an honest exchange of property and not a mere cover for a wagering transaction," and was therefore a valid, legal transaction.

This writing, thus delivered to Bowen and assented to by the defendant, was, under the circumstances, an appointment by writing of a new beneficiary within the meaning of the policy, as well as an assignment. When notice of it was given to the defendant as required by the terms of the policy, and the association did not object or dissent in any way, it operated we think to divest the mother of all her rights under the policy and to make Bowen the sole beneficiary thereunder. *Catholic Knights of America* v. *Morrison*, 16 R. Isl.,

468; *American Legion of Honor* v. *Smith*, 45 N. Jer. Eq., 466; *Burroughs* v. *State Mut. Life Assurance Co.*, 97 Mass., 359.

As a result of the transaction, therefore, Mrs. O'Connell had no more rights in or under the policy as against the defendant than any other stranger to the policy. In lieu of her former rights against the defendant thereunder, she now had only whatever rights accrued to her against Bowen personally under the writing by him. Now as this condition of things, so far as the present case is concerned, continued down to the time of her death, and as her administrator can have no greater rights in this respect than she then had, it follows that the present plaintiff has no rights as against the defendant under the policy, and that for this reason alone, if for no other, he ought not to have been admitted as sole plaintiff. For this reason we think the court erred in admitting this administrator as plaintiff, and that this error entitles the defendant to a new trial. As this disposes of the case upon the present appeal it renders a consideration of the other questions involved unnecessary, unless they are of such a nature that they will necessarily arise again if a new trial is had. Two of them only appear to be of this nature and these will now be considered.

The first arises under the sixth assignment and relates to the sufficiency of the proofs of death. These proofs were made upon printed forms furnished by the defendant, and when made out as required they were sent to the defendant by Gavin, who then claimed to be entitled to the money due on the policy, and were the only proofs made. They consisted in substance of separate statements sworn to and subscribed by Gavin, the claimant, by the physician, by the undertaker, and by the clergyman who officiated at the funeral. They are all made out in due form as required by the company, they were duly filed with the association at the proper time, and no objection was made to them until it was made on the trial of the case. No objection is now made to any of the certificates thus filed except to Gavin's. That contained statements, amongst others, to the effect that he was the legal assignee of the policy and was legally entitled

to the entire amount payable thereon.   On the trial, after Gavin had been dropped from the case, both he and Bowen testified, and there was no evidence to contradict it, that the assignment from Bowen to Gavin, who was Bowen's brother-in-law, was made without consideration, that Gavin had no interest in the policy, and that the assignment was made to shield Bowen's interest from attachment.   The defendant claimed that if this were true and the proofs filed by Gavin were thus false and fraudulent in relation to his interest in the life of Michael O'Connell, then the proofs of the death filed by him were not sufficient but were void, and the claim had never become due; and asked the court to charge the jury to this effect.   The court charged as matter of law that upon the admitted facts the proofs of death were sufficient.

What proofs of death could be required must be determined from the terms of the policy itself, for we have not been made aware of the existence of any law, by-law, rule, or charter provision, which modifies or affects the provisions of the policy in this respect.   The only provision in the policy is this:— "that within ninety days after proof satisfactory to the association shall have been received at its office in Hartford of the death of the insured, while this policy is in force, etc., there shall be due and payable," etc.

The only requirement here is " proof of the death of the insured."   There is no requirement of proof of anything else whatever.   Such proof of death satisfactory to the association is a prerequisite to the bringing of the action, but a true statement of the claimant's interest and how he obtained it is not so made a prerequisite.

Under this provision the association could not perhaps arbitrarily object to the sufficiency of the proofs, but it had the right to insist upon such proofs of death as the law would adjudge to be reasonable and satisfactory.   *Charter Oak Life Ins. Co.* v. *Rodel*, 95 U. S., 237.   It could not, however, require some further statement about some other matter which the only contract between the parties did not provide for. *Taylor* v. *Ætna Life Ins. Co.*, 13 Gray, 434.

In the case last cited the company required the defendant

to furnish a physician's certificate of the death, but the court held that he was not obliged to do so. The court said:—— "He is bound only by the policy itself; that is to furnish 'due proof' of the death. If the defendant would have bound the plaintiff by their by-laws, etc., they should have made the policy in terms subject to those by-laws, etc., or in some way made them a part of the contract contained in the policy." The insurable interest of the claimant need not be shown in the preliminary proofs of death when not re-quired by the policy. *Miller* v. *Eagle Life Ins. Co.*, 2 E. D. Smith, (N. Y.,) 268. In the case at bar there was ample proof of the death, and if we admit that there was an addi-tional statement as to the claimant's interest which was un-true or false, as the defendant claims, and of which statement the defendant might avail itself by way of defense against Gavin's claim to the money, still this would not derogate from the sufficiency of the proofs of death. *Charter Oak Life Ins. Co.* v. *Rodel*, 95 U. S., 232. We therefore think the proofs of death are sufficient.

The remaining matter to be considered relates to one of the other objections made to the admission of the present plaintiff. One of the provisions of the policy, which is made an express condition on which it issued, reads as follows:—— "It is expressly understood and agreed that no action shall be maintained nor recovery had for any claim upon or by virtue of this policy after the lapse of one year from the death of said member." This provision is, as remarked by coun-sel, somewhat obscurely worded, but we think it means, what both parties have assumed it meant, namely, that no suit shall be brought after the lapse of one year from the death of the member. Under this clause the defendant claimed that inasmuch as the present plaintiff, at the time when he was admitted as plaintiff, could not have brought suit be-cause the year had expired, the court ought not to permit him to enter to prosecute.

The statute under which the present plaintiff was ad-mitted reads as follows:——"When any action has been com-menced in the name of the wrong person as plaintiff, the

court may, if satisfied that it has been so commenced by mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." General Statutes, § 889. The defendant's claim in substance is that the substitution of the present plaintiff after the time for bringing a new suit had elapsed, was in effect the commencement of a new suit, and as such was prohibited by the terms of the policy. The provision in question is undoubtedly a bar to the bringing of a suit on the policy after the specified time has elapsed, and it is a valid provision. *Chambers* v. *Atlas Ins. Co.*, 51 Conn., 17 ; *Riddlesbarge* v. *Hartford Ins. Co.*, 7 Wall., 386. The important question is, whether the substitution of a new plaintiff in cases like the one at bar can be regarded as the commencement of a suit within the meaning of the policy. This is a question of considerable importance in this class of cases and we regret that it was not discussed at greater length in the argument of the case before this court. It is a question too, which, so far as we are aware, has not been directly decided by any court of last resort. Under the old procedure it could not well arise, and under the new it is not likely to be of frequent occurrence. Section 889 formed a part of the practice act as originally passed, and of course it must be construed in the light of its provisions and of the radical changes wrought by it with respect to the joinder, admission and dropping of parties to suits. That act provides in substance that all parties having an interest in the subject of the action and in obtaining the judgment demanded, may be joined as plaintiffs except as otherwise expressly provided; that where a complete determination of a controversy cannot be had without the presence of other parties than those of record, the court may direct them to be brought in; and when any person not a party has an interest or title which the judgment will affect, the court on his application shall direct him to be made a party; that no action shall be defeated by the nonjoinder or misjoinder of parties; that new parties may be added and summoned in, and parties misjoined may be

dropped by order of the court, at any stage of the cause, as it may deem the interests of justice to require; and lastly, under the section in question, the court may substitute any person as plaintiff under the circumstances therein specified. It further provides that none of these changes in parties made by order of court shall impair any previous attachment of the estate or body of any person remaining a defendant in the action, nor impair bonds or recognizances of any person remaining a party, either as against himself or his sureties, nor impair receipts to officers for property attached. General Statutes, §§ 883, 887, 888, 889 and 891.

The rules under the practice act provide as follows :—" If, pending the action, the plaintiff assigns the cause of action, the assignee on his written application may either be joined as co-plaintiff or substituted as sole plaintiff as the court may order; provided the same shall in no manner prejudice the defense to the action as it stood before such change of parties." Rule I, § 6.

These provisions have radically changed the old practice with reference to joinder, admission and dropping of the parties to a suit, and the changes were intentionally and deliberately made. The language of section 889 is quite broad; under it the court may, under the circumstances therein specified, substitute " any other person " as plaintiff who is the real party entitled to prosecute the suit; and no exception is made in cases where the time for bringing suit anew has elapsed. The party so substituted is let in to carry on a pending suit, and is not regarded as commencing a new one. After he is substituted he is by the practice act treated and regarded for most purposes just as if he had commenced the suit originally. The writ, the complaint, the service of process, attachments made, bonds given, the entry of the case in court, the pleadings if need be, in short all things done in the case by or in favor of the original plaintiff, except so far as they may be changed by order of court, remain for the benefit of the plaintiff who succeeds him, as if done by and for him originally and just as if no change of parties had been made. So far as the defendant is concerned, the same suit

upon the same cause of action, under the same complaint and pleadings substantially in most cases, goes forward to its final and legitimate conclusion as if no change had been made. This power of substitution is part of the law of procedure, and was the law of the state when this policy was issued. It was the right to prosecute a suit in the ordinary way. Under this law the defendant knew that substitution might be made at any proper time during the pendency of the suit. The policy forbids the institution of a suit thereon after the lapse of the specified time; but it does not and could not forbid a claimant under it to enter as plaintiff after the time had elapsed in a suit brought within the time and to prosecute it to final judgment. " It would be taking strong ground indeed to hold that the right of prosecuting a suit in the ordinary way, although the issuing of a new process might be necessary, has been relinquished by such a condition." *Woodbury Sav. Bank* v. *Charter Oak Ins. Co.*, 31 Conn., 517.

The case of *Burton* v. *Buckeye Ins. Co.*, 26 Ohio St., 467, is a case in some respects analogous to the present case. There the plaintiff within the time limited began suit against the insurance company, but by mistake the name of another company instead of the defendant was inserted in the body of the summons, although the petition contained the name of the defendant. The defendant, after the time for bringing another suit had expired, voluntarily appeared in court and moved to strike the plaintiff's petition from the files. The plaintiff was allowed to amend by inserting the defendant's name, and this when done was held to be a suit brought within the proper time.

We conclude therefore that when, in a proper case under section 889, one plaintiff is substituted in place of another in a pending suit, such substitution is not and cannot be regarded as the commencement or institution of another suit, but simply as the entry of a party to prosecute a pending suit.

There is error in the judgment appealed from and a new trial is granted.

In this opinion the other judges concurred.