ALVIN M. CRAIG vs. S. HARRISON WAGNER ET ALS.

Third Judicial District, New Haven, January Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

Section 1131 of the General Statutes as revised in 1902, which, with
certain additions, was re-enacted in the following year (chapter 193
of the Public Acts of 1903), declares that no civil action or pro-
ceeding shall abate because of the death of any party thereto, but
may be continued by or against the personal representative of
such decedent. Held:—

1. That this statute changed the pre-existing law and introduced a
   new policy respecting the survival of actions; and that under its
   provisions an action for money loaned, which had been brought
   against the debtor in his lifetime and was pending at his death,
   might be continued by scire facias against his executrix, notwith-
   standing the estate was insolvent, and was being settled as an
   insolvent estate in the Court of Probate.

2. That § 343 of the General Statutes, prescribing that, with certain
   exceptions, suits should not be brought against the executor or
   administrator of an insolvent estate in course of settlement, had
   reference to original actions against them and not to those brought
   in the lifetime of the testator or intestate.

3. That inasmuch as the original action was not abated by the defend-
   ant's death but continued against his executrix, the lien secured
   by an attachment of the defendant's property was not dissolved
   but continued against it in the hands of his representative, not-
   withstanding the insolvency of the estate.

4. That the execution in the present case, should one be issued, must
   be limited to the specific property attached, upon which the plain-
   tiff had acquired a lien before the debtor's death.

The personal representative of a deceased defendant should be brought
into court by scire facias and not by motion; but if a motion is
seasonably made and denied upon the ground that the action must
fail because of the insolvency of the estate, the plaintiff is not
chargeable with the delay consequent upon such erroneous deci-
sion, and upon its reversal is still entitled to his writ of scire facias.

The time within which a plaintiff is required to bring in the personal
representative of a deceased defendant, begins to run from the date
of the representative's appointment and not from the date of the
defendant's death; and therefore an attempt to have such repre-
sentative made a defendant at the term next following his appoint-
ment is seasonably made.

Argued January 21st—decided March 5th, 1914.

ACTION for money loaned, brought to the Superior Court in New Haven County where the defendant's executrix, who had been cited in after the defendant's death, moved that the attachment of the defendant's real estate be dissolved, that the action be abated and the cause erased from the docket, because the decedent's estate was insolvent and in settlement as an insolvent estate in the Court of Probate, and no judgment had been rendered against the original defendant during his lifetime; the court, *Bennett, J.*, granted the motion and abated the suit, and the plaintiff appealed. *Error and cause remanded.*

*Louis M. Rosenbluth,* for the appellant (plaintiff).

*Harrison Hewitt* and *Ward Church,* for the appellees (defendants).

BEACH, J. The proposition that an action which would otherwise survive, may be abated at the will of the defendant's executor or administrator by causing his estate to be settled as an insolvent estate, has never been directly determined in this State, although this court has expressed an opinion to that effect in two cases. In *Tweedy* v. *Bennett,* 31 Conn. 276, the action was originally brought against the defendant as executor *de son tort* of the deceased debtor, and a plea of *plene administravit* was overruled because the executor had paid claims of lower statutory rank than that of the plaintiff. (See *Bennett* v. *Ives,* 30 Conn. 329.) The defendant, at the next term of the Superior Court, offered an additional plea alleging that since the last continuance he had represented the estate insolvent and that it was then in settlement as an insolvent estate. This court held that the plea came too late, and went on to observe that when an estate is insolvent

the executor will make himself personally liable unless
he pay the creditors according to their statutory prior-
ity, but that he may protect himself against such
liability by representing the estate insolvent. Then,
as the court says, "all suits pending abate, and on
judgments rendered before such representation of in-
solvency no execution can legally be issued."

Although this language is literally broad enough to
include, and doubtless was intended to include, suits
instituted in the lifetime of the defendant, it was man-
ifestly used, as the context shows, with direct reference
to suits originally brought against the executor. *Bas-
sett* .v. *McKenna,* 52 Conn. 437, was a suit to set aside
a conveyance by the decedent as in fraud of creditors,
and upon the issue whether the property was needed
for the payment of debts, the validity of the claim of
one Catherine Carroll, which had been allowed against
the estate, was disputed on the ground that it was
barred by the statute of limitations. She had brought
suit against the decedent in his lifetime, and it was held
that the suit arrested the operation of the statute, so
that the claim was not barred when presented. The
court observed, although the question was not di-
rectly in issue, that the suit "could not be revived
against his representative [the executor] because of the
insolvency."

Even if these observations had the force of direct
adjudications upon disputed issues, their authority
would have to be re-examined in the light of the present
statute as to survival of actions. Public Acts of 1903,
Chap. 193, p. 149. When *Tweedy* v. *Bennett* (1863)
and *Bassett* v. *McKenna* (1884) were decided, the sur-
vival statute was substantially in the form which it re-
tained until changed in the Revision of 1902. See Gen-
eral Statutes, 1888, § 1005; Revision of 1875, p. 421;
Compilation of 1854, p. 78. These and earlier statutes

provided that in case of the death of a defendant before judgment the action should not abate "if it might originally have been prosecuted against his executor or administrator"; and then followed the provision for a writ of *scire facias*, substantially as in the present Act.

At the common law the death of a sole defendant before judgment would have abated such an action absolutely, and the plaintiff would have been put to a new action against the executor; and the decisions above referred to evidently construe the contemporaneous survival statutes, not as continuing the original action against the executor, but as permitting it to be revived, and to be revived so far only as to allow it to serve the purposes of the new action which, except for the statute, would have to be brought, if it could be brought at all, against the executor. On the other hand, § 1131 of the General Statutes of 1902, since re-enacted, with additions, as chapter 193 of the Public Acts of 1903, p. 149, introduces into our law for the first time a declaration of general policy as to the survival of actions, in these words: "No civil action or proceeding shall abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of such decedent." This statute not only provides that the action shall not abate, but it declares affirmatively that the action may be continued against the executor; and it is also important to observe that the Act is not limited, as were the former Acts, to suits which might originally have been brought against the executor. The *scire facias* provided for by this Act must therefore be treated as a mode of continuing the original action, and not as a mode of substituting a new action in its place; and as the statute applies to all actions not excepted from its provisions by § 3, it follows that the *scire facias* may be issued not-

withstanding that by reason of the insolvency of the estate the action could not originally have been brought against the executor.

There is nothing in § 343 of the General Statutes of 1902 which is inconsistent with these conclusions. That section provides that no suit shall be brought, with certain exceptions, against the executor of an insolvent estate in the course of settlement; that no execution shall issue on any judgment against the executor rendered before the estate was represented insolvent; and that if judgment has not then been rendered the suit shall abate, and the plaintiff may exhibit his judgment or his claim to the commissioners. The provision as to abatement and exemption from execution plainly relates to the principal subject of the section, namely, suits brought against an executor or administrator, and the whole section is intended to protect the executor or administrator from being compelled, by suits brought against him, to pay claims against an insolvent estate otherwise than in their statutory order of priority. But as to an action brought against the defendant in his lifetime, we hold that chapter 193 of the Public Acts of 1903 gives the plaintiff a right to continue it by *scire facias* against the defendant's executor or administrator, notwithstanding the estate is represented insolvent, unless the suit is wholly excepted from the operation of the Act by § 3 thereof.

It is said that the plaintiff can take no benefit of the Act of 1903 because he attempted to bring the executor in by motion addressed to the court, instead of by *scire facias*, and that it is now too late for him to proceed by *scire facias*. We think this objection would be well taken, if the delay were properly chargeable to the plaintiff. *Russell* v. *Hosmer*, 8 Conn. 229, 235; *Johnson* v. *New York & N. E. R. Co.*, 56 Conn. 172, 173, 14 Atl. 773.

In those cases the question was as to the time, since then fixed by statute, within which the plaintiff's executor might enter to prosecute, and the rule was adopted that he might enter at the next term after the death of the plaintiff as a matter of right, but after that only at the discretion of the court upon good cause shown. Applying the same general rule to the case of the death of a defendant, it is clear that the time within which the plaintiff is required to bring in the defendant's executor should run, not from the death, but from the appointment of the executor. In this case the plaintiff brought his motion to have the defendant's executrix made a party within the next term after her appointment, and was met by the objection then made, and subsequently sustained by the court, that he could not proceed by *scire facias* on account of the insolvency of the estate. He is not, therefore, chargeable with the subsequent delay, and he is still entitled to the writ of *scire facias*.

As the case must be remanded, it is desirable that we should also determine the question whether the attachment of real estate was dissolved by the death of the defendant, either alone or followed by the insolvency of his estate. Under the former survival statute, the attachment was immediately dissolved by the death of a sole defendant regardless of the solvency or insolvency of his estate. In *Green* v. *Barker*, 14 Conn. 431, 435, which is the leading case upon the subject, the rule is stated broadly, that "conventional liens, such as mortgages, pawns, etc., are not affected, by the death of the debtor; but all liens by attachment are immediately dissolved." Since then the question has not been re-examined, although the rule is referred to as existing law in *Morgan* v. *New York Nat. Bldg. & Loan Asso.*, 73 Conn. 151, 46 Atl. 877, holding that the unqualified dissolution of a corporation puts an

end to all suits against it and dissolves all attachments. In *Coit* v. *Sistare*, 85 Conn. 573, 576, 84 Atl. 119, the question, though presented by the record, was not submitted to the court for decision. In 1841, when *Green* v. *Barker*, 14 Conn. 431, was decided, the survival statute was in the form already noted, and provided that upon the death of the defendant before judgment the action "shall not abate, if it might originally have been prosecuted against his executor or administrator." Statutes of 1838, p. 49. Then, as now, an action commenced by attachment could not originally have been prosecuted against an executor; nor could any action at all—except for debts due to the State, or for last sickness and funeral charges—be brought against the executor of an insolvent estate depending for settlement. Statutes of 1838, p. 238. So long, therefore, as the saving effect of the survival Act applied only to actions which might originally have been prosecuted against the executor, and so long as the proceeding by *scire facias* was regarded in effect as a substitute for a new suit, the attachment was necessarily dissolved by the abatement of the action in case the estate was represented insolvent; and the attachment might well be held to be immediately dissolved by the death of a sole defendant, either on the ground that no suit commenced by attachment could originally have been prosecuted against the executor, or on the ground suggested in *Green* v. *Barker*, 14 Conn. 431, that if the estate was not insolvent the lien by attachment is unnecessary, because ample security is provided by the executor's bond. But since the present survival statute gives to a plaintiff the right, unqualified by any limitations so far as it exists at all, to continue his pending action against the executor of a deceased defendant, we see no reason why the lien of the attachment should not also be continued, in accordance with

the apparent intention of the legislature. In the absence of statutory prohibition, there is no greater objection to the continuance of the lien of an attachment after the defendant's death than to the continuance of the lien of a chattel mortgage or of a mortgage of lands. The right to continue the original action being established, the attachment will not embarrass or delay the settlement of the estate any more than any other lien. Its continuance, especially if the estate turn out to be insolvent, is in harmony with the rule that a diligent creditor is entitled to the fruits of his activity. We quite agree with the reasoning of the Massachusetts court in *Grosvenor* v. *Gold*, 9 Mass. 209, 210, an opinion delivered before the question was settled by statute in that State: "By an attachment, a plaintiff has a lien upon the subject of it provisionally, that is, to the amount of the judgment he may finally recover; and in so much the *absolute* property of the defendant is diminished. . . . It was said that as the estate— meaning all the estate of the deceased insolvent—shall be proportionally distributed, a necessary consequence is, that all attachments must be dissolved by his death. But to me it seems this consequence does not follow; because the 'estate' of a deceased person, in property attached, does not include anything but the *surplus,* above what is sufficient to satisfy the attaching creditor. Nor is the hardship on the other creditors greater in the case of a deceased insolvent than in that of a living one. It only renders consistent, and more general, the principle by which the vigilance of creditors is rewarded." The continuance of the attachment is also in harmony with the liberal provisions of the Practice Act with reference to joinder and substitution of parties, and to the effect of a change of parties upon previous attachment. General Statutes, 1902, §§ 617–625. In commenting on the effect of these sections we

said, in *Bowen* v. *National Life Asso.*, 63 Conn. 460, 476, 27 Atl. 1059: "These provisions have radically changed the old practice with reference to joinder, admission and dropping of the parties to a suit, and the changes were intentionally and deliberately made."

It is finally objected, on the authority of *Flynn* v. *Morgan*, 55 Conn. 130, 10 Atl. 466, that no execution can be levied upon land except during the lifetime of the defendant owner. That case was an action to foreclose a judgment lien founded upon a judgment obtained in a suit originally prosecuted against the executor; and it was properly held that as execution could not be levied upon the estate in the executor's hands, so also a judgment lien could not be imposed upon lands owned by the decedent. But the reason of that case does not affect the right of a creditor of a decedent to enforce by foreclosure or execution a lien acquired during the debtor's lifetime, against the specific property to which the lien had already attached before the debtor's death. In this case, if judgment goes against the executrix, the execution when issued must be limited to the property attached, in conformity with the rule established in *Ingraham* v. *Phillips*, 1 Day, 117.

There is error, the judgment is reversed and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.